UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 06 B 13247 |
| | ) | Chapter 11 |
| NATIONAL JOCKEY CLUB, | ) | Judge Pamela S. Hollis |
|     Debtor, | ) | |
| | ) | |
| DII NORTHWEST LLC (in the name of | ) | |
| National Jockey Club), | ) | |
| | ) | Adversary No. 10 A 00302 |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| THOMAS CAREY, III, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on a Motion to Dismiss filed by Thomas Carey, III ("Defendant"). Count I asserts a claim for turnover of property of the estate. Count II asserts a claim under Illinois state law for breach of fiduciary duty. After consideration of the pleadings and for the reasons stated below, Defendant's Motion to Dismiss is granted on Counts I and II.

### JURISDICTION AND PROCEDURE

The court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Count I is a core proceeding under 28 U.S.C. § 157(b)(2)(E). Count II is a non-core related claim within in the meaning of 28 U.S.C. § 157(c)(1) since a judgment in favor of Plaintiff, if granted, would increase the pool of assets available to be distributed to creditors. *See Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990).

## FACTS AND BACKGROUND

DII Northwest LLC ("Plaintiff"), in the name of National Jockey Club ("Debtor"), filed this Complaint against Defendant in Debtor's Chapter 11 bankruptcy proceeding. Debtor filed a voluntary petition for Chapter 11 bankruptcy on October 17, 2006. On October 24, 2007, this court entered an Order Approving (I) Settlement and Compromise of Disputes and Claims and (II) Various Related Relief, which granted Plaintiff the right to assert any claims or causes of action belonging to Debtor and the estate against any third party in the name of Debtor and the estate. The Complaint, filed March 2, 2010, sets forth two counts against Defendant. Count I is a claim for turnover of property of the estate under 11 U.S.C. § 542(a). Count II asserts a claim for breach of fiduciary duty under Illinois state law.

Defendant filed this Motion to Dismiss pursuant to Bankruptcy Rule 7012(b)(6). Defendant raises three arguments in support of his Motion: 1) Plaintiff fails to state a claim upon which relief may be granted; 2) Plaintiff lacks standing with respect to Count II; and 3) Plaintiff is barred from bringing Count II by the relevant statute of limitations. In addition, Defendant also moves to strike certain of Plaintiff's allegations pursuant to Bankruptcy Rule 7012(f).

Debtor, incorporated in 1931, operated Sportsman's Park in Cicero, Illinois as a horse racing venue from 1932 until 1998. Between 1999 and 2002, Debtor operated Sportsman's Park as a horse racing and auto racing venue. In 2002, Debtor ceased all operations at Sportsman's Park. In the spring of 2004, Sportsman's Park was sold to the town of Cicero, Illinois.

On July 29, 2002, Debtor entered an agreement with Hawthorne Race Course, Inc. ("HRC") to form Hawthorne National, LLC ("HNL") which allowed Debtor to run horse race meets at the Hawthorne facility in Cicero pursuant to an operating agreement between the parties ("Operating Agreement").

2

HNL began operations on January 1, 2003. Between 2003 and 2006, Debtor used the Hawthorne facility to conduct horse race meets during the spring and HRC used the Hawthorne facility for its meets in the fall.

Defendant served as the President of HNL from January 2003 until fall 2005. During that time, Defendant also served as a manager and board member of HNL. Timothy Carey then served as President of HNL from fall 2005 until HNL ceased operations.

All income from HNL went into bank accounts under the exclusive control of Defendant and later Timothy Carey. None of Debtor's employees had signature authority over any of the bank accounts. Plaintiff asserts that despite the fact that HNL was a 50/50 partnership whereby Debtor funded 50% of the costs of operation, Debtor had no control.

Section 3.6(h) of the Operating Agreement states that no person may "enter into any contract or agreement which obligates [HNL] for a dollar amount equal to or greater than One Hundred Thousand Dollars ($100,000), or for a term longer than twelve (12) months."

Plaintiff alleges that Defendant unilaterally spent $1.2 million on unauthorized upgrades to the Hawthorne facility, including upgrades of luxury items to the office suites of the Carey family, without the necessary approvals needed under the Operating Agreement. Plaintiff states that Debtor complained about Defendant's expenditures throughout 2003, demanding that the spending end and asking to be reimbursed. Debtor's requests were ignored.

Debtor presented a series of formal resolutions to the Board in order to compel an official vote. Resolution No. 2 read:

> Resolved: That the operating agreement of HNL requires that no capital expenditures of more than $100,000 are to be incurred without the approval of the Board of Managers and members. The president has caused such expenditures, unapproved, to occur to the extent of $1.2 million in 2003. The expenses were, therefore, illegal and not authorized. Therefore, a demand is made for the

3

refund of the unauthorized expenses. The president must respond to this demand within 30 days.

The vote resulted in a tie with the HRC members voting against it and Debtor's members voting in favor. Pursuant to the terms of the Operating Agreement, Debtor filed an official demand for arbitration to resolve the tie.

On March 3, 2005, the arbitrator, Ralph Anzivino, issued an award resolving the tie in favor of Debtor. The arbitration award was appealed and confirmed by the Circuit Court of Cook County and the Illinois Appellate Court.

## DISCUSSION

Defendant moves to dismiss this Complaint pursuant to Federal Rule of Bankruptcy Procedure 7012(b) which incorporates Federal Rule of Civil Procedure 12(b)(6). Specifically, Defendant argues that Count I fails to state a claim upon which relief may be granted and that Plaintiff lacks standing to bring Count II and is otherwise time-barred by the relevant statute of limitations.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain, *inter alia*, "a short and plaint statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). All well-pleaded facts must be accepted as true and all reasonable inferences must be drawn in favor of Plaintiff. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The purpose of a motion to dismiss is to assess the sufficiency of the complaint, not to rule on the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Supreme Court has interpreted Rule 8(a) to impose certain hurdles.

> First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' . . . Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that

4

> possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Courts are precluded from considering documents outside the pleadings in decided a motion to dismiss. Fed. R. Civ. P. 12(d). Where a document is referenced in a plaintiff's complaint and is central to the plaintiff's claims, it may be considered in deciding a motion to dismiss. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). The Operating Agreement and arbitration award were attached to the Complaint and are central to Plaintiff's claims; the court may consider them with the Motion to Dismiss without converting it to a motion for summary judgment. *See Federalpha Steel LLC Creditors' Trust v. Federal Pipe & Steel Corp.*, 368 B.R. 679, 685 (N.D. Ill. 2006) (considering a company's operating agreement attached to the complaint in a motion to dismiss).

### I.   Count I: Turnover

Count I seeks turnover of Plaintiff's pro rata share of the $1.2 million in funds allegedly disposed of by Defendant in violation of the Operating Agreement and his fiduciary duties to HNL. Defendant argues that Plaintiff fails to state a claim for which relief may be granted because the arbitration award did not culminate in a money judgment, but was simply a tie-breaker on a board resolution. Plaintiff maintains that the arbitration process ultimately resulted in an obligation for Defendant to repay HNL $1.2 million.

Section 542(a) requires turnover of property to the bankruptcy estate by

> an entity, other than a custodian, in possession, custody, or control . . . of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title . . . unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This is interpreted broadly to include any legally enforceable right of the debtor. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983). State law defines the legal and equitable interests of the debtor. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979). While state law may define the interest, whether a debtor's interest is property of the estate under § 541 is a question of federal law. *Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998).

Turnover is not intended as a method of determining the disputed rights of parties; it is intended as a remedy to obtain what is already acknowledged to be property of the bankruptcy estate. *Krol v. Crosby (In re Mason)*, 386 B.R. 715, 721 (Bankr. N.D. Ill. 2008) (citing *Grochocinski v. Allstate Ins. Co. (In re Lyckberg)*, 310 B.R. 881, 888 (Bankr. N.D. Ill. 2004)). A turnover action cannot be used as a tool to acquire property the debtor did not have a right to possess or use at the commencement of a case. *See Midway Aircraft Eng'g, Inc. v. Am. Airlines, Inc. (In re Midway Airlines)*, 221 B.R. 441, 458 (Bankr. N.D. Ill. 1998).

A breach of contract action may not be transformed into an action for turnover. *Sokol v. Mass. Mut. Life Ins. Co. (In re Sokol)*, 60 B.R. 294, 296 (Bankr. N.D. Ill. 1986); *Borock v. Turner Constr. Co. (In re Sardo Corp.)*, 95 A 01620, 1996 WL 362756, at *14 (Bankr. N.D. Ill. June 11, 1996); *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991); *DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220, 226 (Bankr. D. Del. 2010); *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007).

6

By asserting a turnover claim, Plaintiff puts the cart before the horse. Plaintiff first asserts that its allegation that Defendant's alleged misappropriation of $1.2 million entitles Plaintiff to recover those funds from Defendant. However, a simple allegation of wrongdoing by Defendant, even when backed by a resolution of HNL's Board, does not create a legally enforceable obligation of the type contemplated by § 542(a). There is a difference between property potentially *owed to* a debtor and property *owned by* the debtor.

Plaintiff's argument that the arbitration award casting the deciding vote on Resolution No. 2 resulted in a legally enforceable judgment against Defendant is without merit. Plaintiff cites no law which states that a board resolution is akin to a money judgment and the court's own research revealed nothing in Illinois statutes or case law which would require such a result.

This stands to reason. Board members are under no duty to apply legal standards to the issues before it whereas courts must apply burdens of proof and weigh evidence fairly. Plaintiff should have instituted an action for breach of contract or breach of fiduciary duty to determine Defendant's legal liability. The board resolution may have bound the Board and HNL, *see* Operating Agreement ¶¶ 3.1 & 6.10, but it was not and did not purport to be a *legal* determination of Defendant's liability with respect to the actions specified in Resolution No. 2.

Defendant's Motion to Dismiss is granted with prejudice because Plaintiff fails to allege a basis upon which to believe the misappropriated funds were property of the estate on the date Debtor filed bankruptcy. As such, Defendant's argument regarding laches need not be addressed.

### II.    Count II: Breach of Fiduciary Duty

Defendant seeks to dismiss Count II, arguing that Plaintiff is time-barred from asserting a breach of fiduciary duty claim against Defendant and that Plaintiff does not have standing to bring this breach of fiduciary duty claim.

a. <u>Statute of Limitations</u>

Both parties agree that the applicable statute of limitations for Plaintiff's breach of fiduciary duty claim is five years. *See Armstrong v. Guigler*, 673 N.E.2d 290, 297-98 (Ill. 1996) (applying five year statute of limitations to a breach of fiduciary duty claim under 735 ILL. COMP. STAT. 5-13-205); 735 ILL. COMP. STAT. 5/13-205 (five year statute of limitations for any civil actions not otherwise provided for).

Plaintiff filed this complaint on March 2, 2010. Therefore, the running of the statute of limitations must have begun no earlier than March 2, 2005, unless some exception applies.

Defendant argues that the statute of limitations bars Count II because Debtor knew of the expenditures as early as 2003 and proposed Resolution No. 2 in 2004. Plaintiff argues that the statute of limitations should not bar Count II because Defendant's actions constituted a "continuing wrong." Plaintiff argues that Defendant's "wrong" was continuous because Defendant refused to comply with the finding of the arbitrator, refused to put items on the agenda relating to the alleged repayment obligation, and that it would not have been reasonable to file a new lawsuit each time Defendant breached his fiduciary duty.

Where there is a continuing wrong or violation, it may be a defense to the statute of limitations or delay its running. *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (citations omitted). It applies where a tort involves a continued repeated injury. *Id.* "'It is thus a doctrine not about a continuing, but a cumulative, violation.'" *Id.* (quoting *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008)). It does not apply to "'a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.'" *Id.* (quoting *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005)). "Thus, where there is a single overt act from which subsequent damages may

8

flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003).

Plaintiff cites *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983) for support. *Taylor* is inapposite to Plaintiff's case. *Taylor* involved a copyright infringement action where the first infringement was not a separate and completed wrong, but a step in the course of wrongful conduct that continued until the final act of infringement. *Id.* at 1119. Plaintiff cites no case, from this district or otherwise, in which a court found that a breach of fiduciary duty was a continuing wrong. In fact, there is case law against Plaintiff's position. *See In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (finding that a breach of fiduciary duty claim did not constitute an ongoing wrong and that the limitations period commenced on the date of the alleged wrongdoing). Even though there is a lack of support in case law, this case is still distinguishable from *Taylor*. Here, there is a specific, discrete act which is the basis of Plaintiff's claim: Defendant's alleged illegal expenditure of $1.2 million. Though Plaintiff asserts that Defendant continued to breach his fiduciary duty by refusing to repay HNL and refusing to place items on the agenda relating to repayment, they all related to the same original alleged breach. The continuing violation doctrine does not apply to Plaintiff's breach of fiduciary duty claim.

Another possible saving grace for Plaintiff is the discovery rule. The discovery rule states that the statute of limitations does not begin to run on a claim until the plaintiff knew or reasonably should have known of the injury and that the injury was wrongfully caused. *Superior Bank FSB v. Golding*, 605 N.E.2d 514, 518 (Ill. 1992). Specifically, the limitations period begins to run when "the injured person becomes possessed of sufficient information concerning his

injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980-81 (Ill. 1981).

Defendant argues that Debtor knew or should have known of the expenditures as early as 2003. Plaintiff's only argument with respect to the application of the discovery rule is that Defendant attempts to use facts known today to impute knowledge to Debtor in 2003. Plaintiff cites a case in which the court found a genuine issue of material fact with respect to when a plaintiff should have known about its claim, *U.S. Fire Protection Ill., Inc. v. St. Paul Fire and Marine Ins. Co.*, No. 02 C 7462, 2004 WL 2644407 (N.D. Ill. Nov. 19, 2004). Plaintiff's citation to this case is unconvincing. In that case, the plaintiff argued that it first learned about its potential claim in July 1998 whereas the defendant argued that the plaintiff should have known almost six years earlier. *Id.* at *15. Clearly that case is distinguishable from this case in which Plaintiff admits in the complaint that "[t]hroughout 2003, the Debtor complained about Thomas Carey, III's unauthorized spending spree, demanded that the unauthorized spending end, and asked to be reimbursed." Complaint ¶ 45. Plaintiff's own Complaint admits that Debtor was aware of the alleged illegal conduct in 2003. Certainly that information was sufficient to put a reasonable person on inquiry to determine whether there was actionable conduct involved. Even drawing all reasonable inferences in favor of Plaintiff, it is clear from the Complaint that Debtor was aware of Defendant's conduct in 2003.

Plaintiff suggests that arbitration and appeals process was mandatory and that it should be taken into account in determining the proper start date for the statute of limitations. Plaintiff is correct that the Operating Agreement mandated arbitration in deciding the outcome of Resolution No. 2. Operating Agreement, ¶ 6.10. However, nothing in the Operating Agreement

required Debtor to propose a resolution in order to sue for breach of fiduciary duty to recover for the alleged improper expenditures.

Plaintiff further argues that this Complaint was filed within three years of the Illinois Appellate Court affirming the arbitration award. As discussed above, nothing in the Operating Agreement required Plaintiff to submit a board resolution on the matter before proceeding on a claim against Defendant for breach of fiduciary duty. The appeal of the arbitration award had no effect on the statute of limitations.

Plaintiff also references the seven-year statute of limitations for enforcing a judgment. 735 ILL. COMP. STAT. § 5/12-108. As discussed with respect to Count I, at no point was a money judgment issued in favor of Debtor or Plaintiff against Defendant regarding the alleged illegal expenditure of $1.2 million. There was no judgment to enforce and Plaintiff's reference to the seven-year statute of limitations is unavailing.

As Debtor must have known as early as 2003 and Plaintiff filed this complaint on March 2, 2010, the five-year statute of limitations has run and bars Count II of the complaint.

    b. <u>Standing</u>

Since the statute of limitations has run on Count II, the court need not determine whether Plaintiff has standing, directly or derivatively.

**III.   Motion to Strike**

Since Count II is dismissed as Plaintiff lacks standing and is time-barred, the court need not address Defendant's motion to strike.

## CONCLUSION

For the foregoing reasons, Counts I and II are dismissed with prejudice.

ENTERED:

DATE: 3/3/2011

_____
PAMELA S. HOLLIS
United States Bankruptcy Judge